```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                           CHARLESTON
```

**ATTORNEYFIRST, LLC,**
A West Virginia Limited
Liability Company,

       Plaintiff,

v.                                       Civil Action No. 2:03-cv-02467

**ASCENSION ENTERTAINMENT, INC.,**
A Delaware Corporation,
**STEVEN LOPEZ,** individually,
**JURISFIRST, LLC,** a Nevada Limited
Liability Company, and
**ACADEMY MORTGAGE CORPORATION,**
a Utah corporation,

       Defendants.

<u>**MEMORANDUM ORDER**</u>

    Plaintiff AttorneyFirst, LLC ("AttorneyFirst") filed a Motion to Compel against Defendant Academy Mortgage Corporation ("Academy") seeking Academy's responses to various interrogatories and requests for production. (Docket # 103.) Academy filed a Response outlining its position. (Docket # 105-1.) AttorneyFirst then filed a Reply. (Docket # 110.)

    The requests in dispute can be grouped into four categories: (1) Academy's HUD discovery requests (Interrogatories # 10 and 11 of the First Set; Requests for Production # 39, 40, 41 and 42 of the First Set; Requests # 23, 24, 32 and 34 of the Second Set); (2)

Academy's net branch related discovery requests (Interrogatories # 5 of the Second Set; Request # 6 of the Second Set; Request # 8, 28 and 29 of the Second Set; Request # 35 of the First Set); (3) post-litigation e-mails and other documents (Requests # 26, 29, and 33 of the First Set; Request # 2 and 3 of the First Set; Requests # 11 and 12 of the First Set; Request # 27 of the First Set); (4) Academy's policies and procedures (Request # 41 of the Second Set).

    1.   HUD Discovery Requests

AttorneyFirst seeks HUD materials in Interrogatories # 10 and 11 of the First Set; Requests for Production # 39, 40, 41 and 42 of the First Set; and Requests # 23, 24, 32 and 34 of the Second Set. The court finds that most of these requests are premature and potentially overbroad, because at this juncture, AttorneyFirst cannot demonstrate how such materials might relate to the facts alleged in its Second Amended Complaint. Moreover, while Academy is subject to HUD regulations and RESPA, this is not a case about every potential HUD or RESPA violation committed by Academy. AttorneyFirst is not a federal policing entity; it is an entity alleging specific injuries and specific damages arising from the supposed conversion of its property.

Interrogatories # 10 and 11 seek information as to Academy personnel having responsibilities relative to HUD investigations and those interviewed by HUD in the last five (5) years. (Docket # 103, p. 4-5.) AttorneyFirst argues that statements and notes from

these investigations might pertain to facts alleged herein, or may lead to impeachment evidence, and that it can only begin to discover these if it is provided with the names of Academy personnel involved in the investigations. (Docket # 103, p. 19.) Requests # 39, 40, 41 and 42 seek production of materials relating to a HUD settlement in March 2005. (Docket # 103, p. 12-13.)

AttorneyFirst's Brief inadvertently concedes that these latter requests are premature, stating that "it is proper for Plaintiff to inquire of Academy persons as to the nature of HUD's investigation *to determine whether any portion of the investigation is somehow related to those matters raised in the Second Amended Complaint.*" (Docket # 103, p. 19 [emphasis added].) The court agrees. AttorneyFirst's first step must be to depose the Academy personnel involved in HUD investigations during the relevant time periods, to determine whether those investigations related to any matters alleged in the Second Amended Complaint. If they did not, then no further inquiry into HUD investigations, settlements, or the like is warranted. If instead, the HUD investigations touched upon the matters alleged herein, the door will be opened to further discovery into those specific areas, and the court will reconsider those requests.

Accordingly, the court **ORDERS** that Academy shall answer Interrogatory # 10 and 11 of the First Set within fourteen (14) days of the date of this Order. AttorneyFirst may then promptly

3

depose the individuals of its choosing and may re-apply to this court if appropriate for responses to Requests # 39, 40, 41 and 42 of the First Set.

The Motion to Compel Requests # 39, 40, 41 and 42 of the First Set is hereby **DENIED WITHOUT PREJUDICE**. The court will only grant discovery into those areas upon a showing that the HUD investigation and settlement somehow relates to the matters alleged in the Second Amended Complaint.

Likewise, with respect to Request # 23 of the Second Set, AttorneyFirst cannot as of yet demonstrate that all settlement agreements in which Academy and HUD are settling parties are potentially relevant to this litigation. If, after depositions, AttorneyFirst demonstrates that some portion of those agreements pertain to its allegations, the court will reconsider its request. However, the court will not order the wholesale production of those agreements at this juncture, and the Motion to Compel Request # 23 of the Second Set is **DENIED WITHOUT PREJUDICE**.

For the same reasons, Request # 24 of the Second Set is also **DENIED WITHOUT PREJUDICE** until deposition or other discovery tends to show that all settlement agreements involving Jurisloan, Juristrust, and HUD might be relevant. Following that discovery, AttorneyFirst may re-apply to the court for relief if it can demonstrate that all or some number of those agreements relate to its allegations and should be released.

Request # 32 of the Second Set seeks all HUD settlement statements relative to attorney-originated loans closed by Academy since January 1, 2002.  (Docket # 103, p. 17.) Academy objected that it did not understand AttorneyFirst's use of the phrase "attorney-originated loans."  Id.  Based on the record herein, the court finds that Academy knows the meaning of the phrase very well, and shall answer this request completely.  Academy shall, if necessary for clarification and accuracy, include in its response an explanatory definition of "attorney-originated loans" on which its response is based, so that AttorneyFirst can determine the sufficiency of the response.

Contrary to Academy's objections, these documents relate directly to the allegations herein, are not confidential, except insofar as they contain personal information as to the borrowers. It is **ORDERED** that records responsive to Request # 32 of the Second Set shall be produced with only the borrower's personal information appropriately redacted within fourteen (14) days of the date of this Order.

Request # 34 of the Second Set seeks annual reports filed by Academy with HUD since January 1, 2000.  (Docket # 103, p. 18.) The court finds that annual reports are relevant to the issue of damages, and that there is no merit in Academy's argument that these reports are confidential. It is **ORDERED** that Academy shall provide its response in accordance with these instructions within

fourteen (14) days of the date of this Order.

### 2. Net Branch Related Discovery Requests

AttorneyFirst seeks to discover activity at Academy's net branch locations in Interrogatory # 5 of the Second Set and Request # 6, 8, 28 and 29 of the Second Set, and Request # 35 of the First Set. Academy objects, arguing in its Brief that no "attorney-originated loans" have been processed at any of Academy's branches, and that information about branch operations is therefore irrelevant. (Docket # 105, p. 4.) Academy cites to a letter from its counsel making this statement, and attaches that letter as Exhibit A to its Brief. Strangely, however, Academy did not make this statement itself in its interrogatory responses. (Docket # 105, Exhibit A.)

Statements of counsel are not evidence and are not responsive to discovery requests. AttorneyFirst has the right to verified answers from Academy, and at this point, none of Academy's responses state what its counsel asserts in his letter. Indeed, as AttorneyFirst points out, the testimony before the Honorable Joseph R. Goodwin suggests just the opposite of counsel's statement: Mr. Lopez testified that he was a net branch manager for one of Academy's JurisLoan offices in Pasadena, California; and Adam Kessler testified that Mr. Lopez was hired in August 2003 for the express purpose of generating attorney-originated loans. Mr. Kessler also testified that since the beginning of Mr. Lopez'

6

employment, Academy had been affiliated with jurisloan.com. (Docket # 103, Exhibit, p. 93-5, 140-151, 221-230.)

In its Answers to the above requests, Academy lodged objections as to relevancy, overbreadth/burdensomeness, and confidentiality; but did not state that attorney-originated loans were not processed at its net branches. That fact, coupled with the above testimony, leaves the question of net branch operation in dispute with counsel's statement. The door has been opened for further discovery in this regard.

It is **ORDERED** that Academy must respond to Interrogatory # 5 of the Second Set, subsections (a) through (e), for the period of 2000 to the present. The court finds that subsection (f), requesting names, addresses and telephone numbers of all former net branch employees, violates the privacy interests of those employees, and **ORDERS** that only the names and net branch addresses (not personal addresses or telephone numbers) of the employees who worked since 2000 need be provided. Academy need not answer subsections (g) and (h), because as discussed in the following paragraphs, AttorneyFirst has failed to demonstrate that lease information is reasonably calculated to lead to discoverable information.

Request for Production # 6 of the Second Set seeks production of all leases relative to each net branch location. (Docket # 105, p. 15.) AttorneyFirst argues that Academy's use of leases with

7

Lopez, his net branch or branches, is relevant and probative in determining the mortgage company's compliance with RESPA and HUD regulations. (Docket # 103, p. 21; docket # 110, p. 5.) AttorneyFirst asserts that compliance with these laws is material to this case because AttorneyFirst's model was created with a primary goal of compliance with RESPA and HUD regulations in its generation of attorney-originated mortgages. (Docket # 110, p. 5.) AttorneyFirst further argues that parties to these lease agreements are unknown, and may reveal witnesses having knowledge or information relative to matters raised in the Second Amended Complaint. (Docket # 103, p. 21.)

The court is not persuaded by these arguments, and **DENIES** the motion to compel answers to subsections (g) and (h) of Request # 5, as well as Request # 6 of the Second Set. AttorneyFirst is not a policing entity for HUD and RESPA compliance. As Academy points out, whether or not Academy obeyed those regulations is a separate issue from the matters and damages alleged to have ensued to AttorneyFirst in its Second Amended Complaint. (Docket # 105, p. 2, 5.) The fact that the AttorneyFirst model was created with a goal of RESPA/HUD compliance does not mean that any other model with that goal was more or less likely to have been stolen from AttorneyFirst. Indeed, one would hope that all models would seek to comply with the law.

Nor is the court persuaded that these documents must be

produced to divulge the identities of witnesses with discoverable information. Witness information can be obtained through the parties' Rule 26 disclosures, depositions, and other documents produced in response to AttorneyFirst's numerous discovery requests.

Requests # 8, 28 and 29 of the Second Set seek Academy's loan origination and loan sale schedules for both Academy and its net branches over the last several years. Apparently, Academy has promised a supplemental response to Request # 8, but some confusion arose as to whether it would supplement # 28. (Docket # 103, p. 21; docket # 105, p. 5-6; docket # 110, p. 5-6.) Academy alleged that the loan sale schedules requested in Request # 28 were proprietary and confidential; however, the Honorable Joseph R. Goodwin has denied its request for a protective order due to the proposed order's lack of specificity. (Docket # 101.) Academy argues that to the extent this request calls for "rate sheets", such documents are not relevant to any of the allegations in the Second Amended Complaint. (Docket # 105, p. 5-6.) The court, however, agrees with AttorneyFirst that any documents relating to the sale of attorney-originated mortgages and generation of revenues by that product are discoverable. Academy's arguments are rejected, and the court **ORDERS** that the loan sale schedules corresponding to attorney-originated loans, whether those include rate sheets or other responsive documents, shall be produced within fourteen (14)

days of the date of this Order, with only personal information as to loan recipients appropriately redacted.

Academy stated in its Brief that it would submit an amended response to Request # 29 of the Second Set reflecting the fact that it never generated separate "loan sales schedules" or "rate sheets" for any of its branch offices.  (Docket # 105, p. 6.)  Again, as above, if any attorney-originated loans were initiated or processed through any branch offices, Academy is **ORDERED** to produce the requested documents within fourteen (14) days of the date of this Order, with personal information of any loan recipients redacted as appropriate.

Finally, with respect to Request # 35 of the First Set, Academy's "Manager's Training Guide" shall be produced within fourteen (14) days of the date of this Order.  In light of Judge Goodwin's ruling denying a protective order (docket # 101), this shall be produced without redaction or instructions for restricted use.

### 3. Post-Litigation Emails and Other Documents

AttorneyFirst seeks to discover the written communications among defendants, who corresponded primarily via email during relevant time frames.  (Docket # 103, p. 22.)  Academy objected to producing any email communications generated after this litigation commenced on November 17, 2003, claiming that such correspondence was irrelevant and not reasonably calculated to lead to discovery

of admissible evidence. (Docket # 103, p. 22.)

The requests at issue are Request for Production # 2, 3, 11, 12, 26, 27, 29 and 33 of the First Set.

Request # 2 and 3 seek all minutes of Board of Directors' and Shareholders' meetings since January 1, 2002. (Docket # 103, p. 5-6.) Academy objected that these materials were irrelevant and confidential in nature, and that there was nothing contained in any of these minutes relative to any of the claims asserted herein. <u>Id.</u> In its Response, Academy argues further that none of these minutes reflect any discussion concerning "attorney-originated loans"; hence, they have no bearing on this action. (Docket # 105, p. 7.)

Academy views the usefulness of the request too narrowly. Minutes from Board of Directors meetings and Shareholder meetings may reflect the direction and governance of Academy as pertaining to the facts alleged in the Second Amended Complaint: Academy's use of the AttorneyFirst web interface for its benefit without authorization (Second Amended Complaint, p. 18, paragraph 78); Academy's hiring of Steven Lopez and any articulation of his responsibilities (Second Amended Complaint, p. 19, paragraph 82); the formation and registration of the tradename Jurisloan (Second Amended Complaint, p. 20, paragraph 86); Lopez' efforts at recruiting attorneys for Academy in September 2003 to originate loans through Jurisloan (Second Amended Complaint, p. 20, paragraph 87); the formation of the JurisTrust website and benefits flowing

11

therefrom (Second Amended Complaint, p. 23), and others.

The court finds that the minutes of these meetings are discoverable. Academy has not made any persuasive arguments as to why these materials should be kept confidential. Judge Goodwin has denied the parties' request for a protective order. (Docket # 101.) Accordingly, Academy is **ORDERED** to produce these materials within fourteen (14) days of the date of this Order, and such materials need not be kept confidential.

Requests # 11 seeks production of all documents, including correspondence, memoranda, contracts, faxes, emails and other writings to and from JuristFirst, LLC, its officers, agents, members and employees. (Docket # 103, p. 6.) Request # 12 seeks the same information as between Academy and Ascension. Id. at p. 7. Academy objected that these requests were overbroad, unduly burdensome and oppressive. It also objected to producing any documents generated on or before November 17, 2003, the date on which Claimant filed its civil action.[1] Finally, it claimed these documents were proprietary and confidential. Id.

Academy is correct that the requests are overbroad and unduly burdensome. As written, Request # 11 calls for production of far

---

[1] It is assumed that Academy means documents dated or generated after November 17, 2003, not before. Despite its objection, Academy produced emails labeled ACAD00108 to ACAD00174, which were generated prior to November 17, 2003. (See Docket # 103, p. 6-7.) Academy's Brief likewise argues that it is documents generated after the inception of the Complaint which are irrelevant.(Docket # 105, p. 6-7.)

more than what could conceivably be relevant here—-not the least of which would be private employee or personal information among JuristFirst officers, agents, members and employees. Likewise, there is no showing that _every_ communication between Academy and Ascension should be discoverable; hence, Request # 12 is overbroad.

Nonetheless, the court understands AttorneyFirst's need to discover the communications concerning matters alleged in the Complaint. Counsel for AttorneyFirst shall narrow Requests # 11 and 12 to specific topics or issues desired, and shall limit the request to a time frame relevant to this action. In order to expedite discovery thereafter, it is **ORDERED** that Academy shall have three (3) days to notify the court of any objection to these two revised Requests, and AttorneyFirst may respond to any such objection within three (3) days of receipt of the objections.

Request for Production # 26 seeks email communications sent to or received by Academy's officers, directors, employees and agents following January 1, 2002 relative to a list of names and topics. (Docket # 103, p. 7-8.) Academy objected that the request was overbroad and sought irrelevant information, and that the request should be limited to a time frame before inception of this litigation.[2]

---

[2] Again, Academy's answer and objection to the Requests lodged an objection to emails _before_ November 17, 2003; however, it simultaneously produced some documents from that time frame. Similarly, Academy's Brief argues against production of emails _after_ that date, not before. As above, the court will infer from

The court finds that the information sought is discoverable. The time frame will not be limited to the period before inception of the suit on November 17, 2003. Information contained in subsequent emails may be probative of damages and may tend to show matters such as bias, prejudice or position in this litigation. It is **ORDERED** that Academy shall answer the Request as written within fourteen (14) days of the date of this Order.

Request for Production # 27 of the First Set requests Academy's income statements, profit and loss statements and balance sheets for the calendar years 2002-2005. (Docket # 103, p. 8.) Academy agreed to produce those financial statements for the years in which it processed "attorney-originated loans" only, and asserted that these could only be produced subject to a protective order. (Docket # 105, p. 7.)

The court finds little merit in Academy's argument. The Second Amended Complaint alleges that Academy engaged in business as Jurisloan, Juristrust and/or Juris Trust over a period of years. (Docket # 64, Second Amended Complaint, p. 2, paragraph 6; p. 12, paragraph 50; p. 19, paragraph 81; p. 23, paragraph 98.) The harm alleged is ongoing, rather than limited to only those years in which attorney-originated loans were generated. In addition, the Second Amended Complaint alleges punitive damages against Academy

---

this discrepancy that Academy meant to object to production of emails <u>after</u> suit was filed, and simply erred in the wording of its objection.

and other defendants.  (Docket # 64, p. 35, paragraph 166.) Academy's financial information would be relevant, at minimum, to that issue, regardless of when any attorney-originated transactions initiated.

The court finds that financial information for the year 2002 (one year prior to Lopez's employment) is discoverable, insofar as it shows Academy's financial status at the starting point of this venture.  The court rejects Academy's argument that the requested financial materials should be subject to a protective order. Accordingly, it is **ORDERED** that Academy shall produce the financial documents requested for the years 2002-2005 within fourteen (14) days of the date of this Order.

Request # 29 of the First Set requests all email communications from January 1, 2002 to the present containing any of certain designated terms, some of which are individuals' names. (Docket # 103, p. 9.) Academy objected that this request was overbroad and unduly burdensome, and objected to producing any documents dated or generated before November 17, 2003.[3] Nonetheless, it did produce some responsive emails, ACAD00108 to ACAD00174, dated on or before November 17, 2003. (Docket # 103, p. 10-11.)

The court has reviewed the topics listed in the request and

---

[3] See footnotes 1 & 2, supra. In any event, inquiry from 2002 forward is appropriate for this request, as some emails may have been exchanged before Lopez' employment with Academy began.

15

finds subsections (a) through (i) and subsection (w) problematic. These requests relate to individuals, and could contain information far afield from any matters alleged herein. In order to protect personal privacy of those individuals, the court now limits the scope of Request # 29 of the First Set, and **ORDERS** that only those emails naming the individuals named in (a) through (I) and subsection (w) <u>which concern matters alleged in the Second Amended Complaint</u> shall be produced.

Subsection (y) of this Request seeks emails that contain the term "HUD". (Docket # 103, p. 10.) As stated above, based on the record at this juncture, Academy's compliance or lack of compliance with HUD regulations, the HUD investigation, and/or the HUD settlement all appear to little bearing on the facts alleged in the Second Amended Complaint. Until AttorneyFirst can demonstrate why this information should be discoverable, the motion to compel wholesale production of emails containing the acronym "HUD" in response to subsection (y) of Request # 29 of the First Set is **DENIED WITHOUT PREJUDICE.**

The balance of Request # 29 of the First Set seeks discoverable information. Accordingly, it is hereby **ORDERED** that Academy shall answer Request # 29 of the First Set as directed above within fourteen (14) days of the date of this Order.

Request No. 33 of the First Set requests production of all documents, including correspondence, emails, contracts, personal

files, memoranda, and other writings relative to Steven Lopez. (Docket # 103, p. 11.) Academy objected that this request was overbroad, that the information sought was irrelevant, and that it objected to producing any materials dated or generated on or before November 17, 2003.[4] Again, notwithstanding its objection, it produced documents ACAD00108 to ACAD00174 in response to this request. Id.

As before, the court finds that this request is overbroad.  A demand that Academy, Lopez' employer, produce  "any information relative to Steven Lopez" violates obvious privacy concerns and requires assembly of much personal information that will have no bearing on this litigation.  Accordingly, the court now narrows this request to <u>any information relative to Steven Lopez which may have bearing on any of the matters alleged in the Second Amended Complaint</u>.  The plain allegations in the Complaint are the lens through which this Request shall be viewed; Academy may not filter the request through its defenses or its position that only "attorney-originated loans" are relevant.  Academy is hereby **ORDERED** to answer Request No. 33 of the First Set in accord with these instructions within fourteen (14) days of the date of this Order.

    4.    Academy's Policies and Procedures

Request for Production No. 41 of the Second Set requests

---

[4] See footnotes 1 & 2 supra.

Academy to produce all policy and procedure manuals for the company. (Docket # 103, p. 18.) Academy objected that this information was both irrelevant and confidential. Id. In its Response, Academy indicated that this was an incorrect response, and that aside from the "Manager's Training Guide" referred to previously, it had no policies and procedures manuals. (Docket # 105, p. 8.)

In accordance with the above, Academy shall produce the "Manager's Training Guide", together with any other responsive documents which may exist, and shall provide a verified amended response to this request within fourteen (14) days of the date of this Order.

Plaintiff's Motion to Compel (docket # 103) is hereby **GRANTED IN PART AND DENIED IN PART** as set forth more fully herein. The parties shall bear their own costs and attorney's fees.

The Clerk is instructed to transmit copies of this written opinion and Order to counsel of record.

**ENTER** this 2nd day of June, 2006.

_____
Mary E. Stanley
United States Magistrate Judge